# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **LETISHA KELLY,** | } |
| **Plaintiff,** | } |
| v. | } Case No.: 5:22-CV-00046-RDP |
| **KILOLO KIJAKAZI,** | } |
| **Acting Commissioner of Social Security,** | } |
| **Defendant.** | } |

## MEMORANDUM OF DECISION

Plaintiff Letisha Yvonne Kelly brings this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her claims for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). *See* 42 U.S.C. §§ 405(g), 1383(c). Based on the court's review of the record and the briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

**I.   Proceedings Below**

This action arises from Plaintiff's application for Title II Disability Insurance Benefits ("DIB") filed on September 4, 2019 (Tr. 94), as well as her application for Title XVI Supplemental Security Income Benefits filed on November 13, 2019 (Tr. 297). Plaintiff alleges a disability onset date of May 1, 2019.[1] (Tr. 95, 290). Plaintiff's applications were denied initially and upon reconsideration. (Tr. 146–49). On August 24, 2020, Plaintiff requested a hearing before an

---

[1] Plaintiff's SSI application shows a disability onset date of May 2, 2019. (Tr. 297). On March 23, 2020, Plaintiff amended that date to May 1, 2019. (Tr. 290).

Administrative Law Judge ("ALJ"). (Tr. 221–22). Plaintiff's request was granted, and a telephone hearing was held on January 14, 2021. (Tr. 53–93, 248). Plaintiff, her counsel Kay Dansby, and vocational expert ("VE") Matthew McClanahan appeared at the telephone hearing. (Tr. 53–55).

In his March 29, 2021 decision, the ALJ found that Plaintiff had met the insured requirements of the Act through December 31, 2024, and has not engaged in substantial gainful activity ("SGA") since her alleged disability onset date of May 1, 2019. (Tr. 30). The ALJ also found Plaintiff has a post lumbar fusion, which qualifies as a severe impairment. (*Id.*). However, the ALJ concluded that Plaintiff does not have an impairment or a combination of impairments that equate to the level of severity of a listed impairment. (Tr. 31). Further, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform light work with limitations and is capable of performing her past relevant work. (Tr. 34, 42). Thus, the ALJ determined that Plaintiff is not disabled. (Tr. 43–44).

On November 22, 2021, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, making that decision the final decision of the Commissioner, and therefore, a proper subject of this court's review. (Tr. 1–4).

**II.     Statement of the Facts**

At the time of the hearing, Plaintiff was forty-eight years old and had completed some advanced education, including a coding program at a technical school. (Tr. 57–58). Her previous work experience includes billing coding instructor, HCC coder, medical records tech coder, neurosurgery coder, and operation administrative assistant. (Tr. 58, 394–99). Plaintiff last worked on May 1, 2019. (Tr. 58). Plaintiff testified that she was terminated from her last job due to excessive absenteeism related to her illnesses. (Tr. 58–59). Plaintiff alleged that she is disabled due to acoustic neuroma, anxiety, Sjogren's Syndrome, fibromyalgia, lupus, lumbosacral

2

spondylosis, lumbosacral spondylolisthesis, intervertebral disk disorder, arthrodesis status (fused spine), bilateral sensorineural hearing loss, and a C4–5 osteophyte with narrowing. (Tr. 406). Plaintiff testified that her pain is the main factor that prevents her from working. (Tr. 60). Plaintiff testified that it is necessary for her to lie down for most of the day, she resides with her parents, and depends on them for financial assistance. (Tr. 59–60, 74–75). Plaintiff testified that she previously lost but recently regained insurance. (Tr. 59).

In August 2016, Plaintiff was referred to Montgomery Rheumatology Associates with complaints of dry mouth and dry eyes. (Tr. 517). She received an overall normal exam with tenderness at the PIP and MCP joints and dry skin. (*Id.*). Plaintiff was also seen by Montgomery Eye Physicians for eye irritation. (Tr. 535). There, Plaintiff was diagnosed with Sjogren's syndrome with keratoconjunctivitis sicca. (Tr. 531). Plaintiff received a prescription for eye drops and at a follow up visit on August 31, 2016, reported improvement. (Tr. 529).

In October 2016, Plaintiff was evaluated by Rheumatology Associates of North Alabama, P.C. ("RANA") for complaints of arthralgia of multiple joints, mainly in her hands, dry eyes and mouth, and fatigue. (Tr. 639). Following her exam, Plaintiff had an x-ray of bilateral hands which showed "good alignment with . . . periarticular osteopenia but mild decrease at the DIPs." (Tr. 644). In November 2016, Plaintiff's primary care doctor at Chamnong Family Medicine noted spinal tenderness with decreased range of motion in Plaintiff's lumbar but no complaints or evidence of mental depression or abuse. (Tr. 539).

In January 2017, Plaintiff visited The Orthopaedic Center in Huntsville for post-op diskectomy appointments. (Tr. 775, 784). And, in February 2017, Plaintiff presented to Pappas Ear Clinic, P.C. with complaints of pulsating in her left ear. Plaintiff was diagnosed with a right acoustic neuroma measuring 6 x 5 mm., right-sided sensorineural hearing loss, and bilateral

tinnitus and pulsation. (Tr. 541). Plaintiff declined surgical treatment for the acoustic neuroma. (Tr. 542–43). In May 2017, Plaintiff reported knee pain with moderate swelling. (Tr. 763). In June, Plaintiff began steroid injections for her knee pain and Synvisc injections for "early osteoarthritis." (Tr. 759). In August, she had a facet block for the pain persisting in her back and reported "90% relief of her pain" at a follow-up appointment. (Tr. 750).

In February 2018, an MRI showed Plaintiff to have a "foraminal extrusion of the disc . . . caus[ing] significant neural foraminal stenosis" and "foraminal stenosis at the 5, 1 level with impingement of the nerve." (Tr. 739). Dr. Sammons with The Orthopaedic Center recommended surgery. (*Id.*). Plaintiff underwent back surgery on March 20, 2018. (Tr. 734). In a follow up appointment on April 4, 2018, Plaintiff reported her pain to be "completely resolved," however, Plaintiff reported "continuing radicular pain radiating down her right lower extremity from buttock to great toe . . . interrupting her sleep." (*Id.*). On May 2, 2018, Plaintiff returned to the clinic with problems related to her back, and Dr. Sammons recommended an epidural. (Tr. 730). In June, post epidurals, Plaintiff reported "significant improvement" but complained of right knee pain. (Tr. 721). Plaintiff was given a steroid injection. (Tr. 721, 723). In August 2018, Plaintiff received a Synvisc injection in her right knee. (Tr. 713). Plaintiff continued to see The Orthopaedic Center for ongoing right knee complaints and received several Synvisc and steroid injections. (Tr. 703–04, 707).

In March 2020, Plaintiff presented to her primary care at Chamnong Family Medicine with complaints of an upper respiratory infection and cough. (Tr. 996). At that visit, Plaintiff's physical assessment noted her gait was normal, with "[n]ormal upper and lower extremities, bilaterally" with power assessments of 5/5 bilaterally. (Tr. 997). Her psychiatric assessment noted that Plaintiff had a "normal thought pattern" and "no gross evidence of depression or abuse." (*Id.*).

4

Plaintiff presented to The Center for Pain PC ("CFP") May 2020 where Dr. Katz assessed that Plaintiff was "able to perform ADLs with . . . current treatment." (Tr. 1021). During multiple physical exams during 2020, CFP providers' physical assessments of Plaintiff's extremities included normal strength and range of motion. (Tr. 1024, 1046, 1050, 1055). Her lumbosacral spine assessments ranged from no tenderness to positive for tenderness, and from a normal to mild to moderate decrease in range of motion, but with normal muscle tone and strength. (Tr. 1024, 1046, 1050, 1054). During these exams, Plaintiff's mood and affect were always assessed as "normal" and "appropriate." (Tr. 1024, 1046, 1051, 1055). And, her gait and ability to stand without assistance were always assessed as "normal" and "without difficulty." (*Id*.). Throughout her visits with CFP in 2020, Plaintiff received steroid and epidural injections for pain. (Tr. 1026, 1038, 1040, 1042, 1105.).

Plaintiff underwent several consultative examinations following her applications for disability benefits. On January 21, 2020, Dr. Lewis performed a physical consultative exam. (Tr. 102). Dr. Lewis' findings included bilateral parapatellar tenderness with decreased range of motion but without further abnormalities, normal dexterity, able to squat about sixty per cent of normal, and no deformity in her back. (Tr. 102–103). Plaintiff presented with mild decreased range of motion of her lower back, had normal reflexes, and normal cognition with good motivation. (Tr. 103). Dr. Lewis concluded stating that Plaintiff is unable to perform activities of work. (*Id*.).

On January 28, 2020, Dr. Kerr performed Plaintiff's mental consultative examination. (*Id.*). Dr. Kerr noted that Plaintiff arrived on time and struggled to stand when called from the waiting room. (*Id.*). Further, Dr. Kerr noted that during the examination, Plaintiff "made good eye contact throughout the interview, smiled readily, and demonstrated excellent social skills," reported symptoms of depression, hopelessness, irritability, and excessive sleeping, but that she

5

feels better when taking Lexapro rather than her current Cymbalta. (*Id.*). Dr. Kerr noted Plaintiff was upbeat for most of the interview, teared up occasionally, and "it was clear that [Plaintiff] was presenting her best front, when in fact she feels demoralize, lonely and anxious." (*Id.*). It was noted that Plaintiff reported her main stressor is her pain, and she was concerned with how to pay for medical bills after losing her Obamacare. (*Id.*). Dr. Kerr found Plaintiff cognitively showed no signs of confusion, loose associations, or psychosis, and his diagnoses included Major Depressive Disorder, Anxiety, and psychological and behavioral factors associated with medical diagnosis. (Tr. 104). Dr. Kerr assessed that Plaintiff "appears to function poorly . . . [and] succumb[s] to hopelessness and demoralization," is capable of interacting with coworkers, "cannot function independently at present," and that Plaintiff's medications may compromise her ability to concentrate. (*Id.*). He concluded that Plaintiff's "prognosis for sustained gainful employment is poor." (*Id.*).

In March 2020, based on her analysis of the evidence, consultative examiner Dr. Mussell found Plaintiff's "allegations [to be] only partially consistent with the objective medical evidence." (Tr. 109). Consultative examiner Dr. Blackmon noted that Plaintiff has no formal mental health prescription as she has not received mental health prescriptions from a mental health provider. (Tr. 112, 502). In July 2020, Dr. Estock and Dr. Sellman reviewed Plaintiff's new medical records. (Tr. 185–86, 189–90). Both determined that the new records showed no new or worsening conditions. (*Id.*).

## III.    ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is defined as activity that is both "substantial" and

"gainful." *Id.* § 404.1572. "Substantial" work activity is work that involves doing significant physical or mental activities. *Id.* § 404.1572(a). "Gainful" work activity is work that is done for pay or profit. *Id.* § 404.1572(b). If the ALJ finds that the claimant engages in activity that meets both of these criteria, then the claimant cannot claim disability. *Id.* § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. *Id.* § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. *Id.* § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments. *Id.* § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. *Id.* § 404.1520(a)(4)(v). In the final part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience. *Id.* § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers,

of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. *Id.* §§ 404.1520(g), 404.1560(c).

In this case, the ALJ determined that Plaintiff: (1) meets the Act's insured status requirement through December 31, 2024; (2) has not engaged in substantial gainful activity since May 1, 2019; (3) has the severe impairment post lumbar fusion; but (4) does not have an impairment or combination of impairments as listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 30–31). After considering the record, the ALJ found that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with limitations, including no work on ladders, no work involving vibrations, and no work with frequent exposure to extreme heat or cold. (Tr. 34–35). Based on the VE's testimony, the ALJ found that Plaintiff is capable of performing her past relevant work as the work does not require activity that her RFC precludes. (Tr. 42). Further, the ALJ found that, based on Plaintiff's age, education, work experience, and RFC, in addition to her past work, there is a significant number of other jobs in the national economy that she can perform, such as a cashier, office helper, and hand packer and inspector (Tr. 42–43). Thus, the ALJ concluded that Plaintiff is not disabled as defined by the Act. (Tr. 43–44).

**IV.    Plaintiff's Argument for Remand and Reversal**

Plaintiff presents two arguments for remanding the ALJ's decision. First, Plaintiff contends that the ALJ improperly evaluated the opinions and prior administrative findings of the record and the medical opinions of consultive examiners. (Pl. Mem. 1, 10). Second, Plaintiff argues that the ALJ relied on Plaintiff's lack of treatment to discredit her testimony. (*Id.* at 1).

**V.    Standard of Review**

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th

Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## VI. Discussion

Plaintiff argues the ALJ arbitrarily relied on parts of the consultive examiners' opinions to support his conclusion, improperly dismissed her testimony about her pain, and incorrectly relied on her lack of treatment to reach his decision. (Pl. Mem. 1, 10–12). For the reasons stated below, the court concludes that the ALJ based his decision on substantial evidence and the correct legal standards were applied. Thus, the ALJ's decision is due to be affirmed.

### A. Substantial Evidence Supports the ALJ's Evaluation of the Opinions and Prior Administrative Findings.

Plaintiff argues that the ALJ improperly evaluated the opinions and prior administrative findings of the record and consultive examiners by arbitrarily choosing facts to support his conclusion and that substantial evidence does not support the ALJ's decision. (Pl. Mem. 1, 10–11). Under the updated regulations, the Social Security Administration does not give deference to a single medical opinion or prior administrative finding but instead, considers the opinions and prior findings together using five factors: supportability, consistency, relationship with the claimant, specialization, and other factors that weigh in support of or against the medical opinion or prior administrative findings. 20 C.F.R. § 404.1520c(a), (c). The most important factors, however, are supportability and consistency. *Id.* § 404.1520c(a). A medical source has supportability if his or her opinion holds relevant and objective evidence and supporting explanations. *See id.* § 404.1520c(a)(c)(1). A medical source has consistency when other medical and nonmedical sources support the same claim. *See id.* § 404.1520c(a)(c)(2). An ALJ must articulate how he evaluated a medical source's supportability and consistency in his decision but is not required to articulate the last three factors unless multiple sources are conflicting but equally persuasive. *See id.* § 404.1520c(b)(1), (3). Further, medical opinions stemming from a one-time examination are not entitled to special weight. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 115, 1150 (11th Cir. 2004); *Light v. Kijakazi*, No. 4:21-CV-000236-RDP, 2022 WL 3570333, at *7 (N.D. Ala. Aug. 18, 2022). Here, Plaintiff contends that the ALJ relied on the opinion of two doctors while dismissing three others as conclusory or outside the medical providers' field of expertise. (Pl. Mem. 11).

First, Plaintiff argues that the ALJ dismissed the opinion of Dr. Kerr, the consultive psychological examiner, regarding Plaintiff's physical examination as outside her expertise, but relied on medical opinions of doctors who specialized in fields other than psychology as to her mental state. (Pl. Mem. 11). Plaintiff contends this shows that the ALJ arbitrarily relied on medical opinions. But, Plaintiff misunderstands the ALJ's review of the non-psychiatric physicians' mental health assessments. The ALJ did not rely on these specific opinions to discredit the State Agency Psychiatric consultants; rather, they were cited as an example to show the record was void of medical sources supporting any mental health problems. And the ALJ *articulates* that it was the *record* that was inconsistent with the psychiatrists' medical opinions: "The record reveals little or no complaints of any mental problems after these opinions." (Tr. 40). There is no record that Plaintiff sought formal psychiatric treatment or experienced any hospitalization. (Tr. 38). Further, because the psychological examiner and the State Agency Psychiatric consultants were all one-time examiners, their medical opinions were not due any special weight, *see Crawford*, 363 F.3d at 1150, and the ALJ was not required to defer to their opinions as they lacked the requisite supportability and consistency. *See* 20 C.F.R. § 404.1520c(a), (c).

Second, in support of her arbitrary reliance argument, Plaintiff contends that the ALJ found some doctors' language to be conclusory, but contends that the same type of language used by other doctors was found persuasive and probative. (Pl. Mem. 11). That argument misses the mark. Plaintiff has failed to read the ALJ's explanation in context. In the next paragraph, the ALJ acknowledged that Drs. Mussell and Sellman did not have a treating relationship with Plaintiff. (Tr. 41). However, as the ALJ explained, he did not rely "exclusively" on Drs. Mussell and Sellman's opinions. (*Id.*). Rather, he evaluated the record, Plaintiff's testimony, and gave further

weight to the medical opinions that were more *consistent* with and *supported by* the record and medical evidence. (*Id.*).

Because the ALJ evaluated the medical opinions and administrative findings based on their supportability and consistency with the record and medical evidence, a "reasonable person would accept" the ALJ's evaluation of the medical opinions and findings to support his determination that Plaintiff is not disabled. *Martin*, 894 F.2d at 1529. Therefore, substantial evidence supports the ALJ's decision.

> **B.     Substantial Evidence Supports the ALJ's Evaluation of Plaintiff's Testimony and Lack of Treatment**

Plaintiff argues that the ALJ improperly discredited Plaintiff's testimony by relying on Plaintiff's lack of treatment. (Pl. Mem. 12). Plaintiff first asserts that the ALJ made his decision without properly considering her financial situation as a factor that would excuse lack of treatment for her pain. (*Id.* at 13). Second, she asserts that the ALJ improperly rejected Plaintiff's "allegations of pain *solely* on the lack of objective medical evidence." (*Id.* at 15) (emphasis added).

> **1.     Substantial Evidence Supports the ALJ's Decision Weighing Plaintiff's Financial Situation and Her Lack of Treatment.**

Plaintiff's argument that the ALJ did not weigh her financial situation when evaluating her lack of treatment is without merit. While it is the ALJ's responsibility to fully develop the record, it is the claimant's responsibility to prove her disability by providing medical records as evidence to support her subjective complaints. *See* 20 C.F.R. § 416.912(a)–(b); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

To be sure, an ALJ should not rely solely on a claimant's failure to seek treatment, but instead, should consider "good cause explanation[s] for [the] failure," including financial difficulties. *Henry v. Commissioner of Social Security*, 802 F.3d 1264, 1267–68 (11th Cir. 2015).

But, an ALJ is only required to further evaluate a claimant's financial situation when "noncompliance [is] the *sole ground* for den[ying] . . . disability benefits, and the *record contains evidence*" showing the claimant's inability to afford treatment compliance. *Ellison*, 355 F.3d at 1275 (emphasis added). Here, the ALJ's determination regarding noncompliance was not the "sole ground for den[ying] . . . [Plaintiff's] disability benefits." *Id.* Therefore, the ALJ was not obligated to further evaluate Plaintiff's financial situation, and he did not need to excuse Plaintiff's noncompliance. *See id.*

The ALJ explained that his determination was based on the fact that the "overall evidence of record indicates a higher degree of functioning than [Plaintiff] alleges," the "record reveals little or no complaints of any mental problems," the consistency and supportability of Plaintiff's alleged complaints in comparison to the record, and the "totality of all the other evidence in the record." (Tr. 40–42). The ALJ considered Plaintiff's testimony as to her financial situation (in *addition* to the other evidence) but found it unpersuasive because "the record contains [no] evidence" showing Plaintiff's inability to afford treatment compliance. *Ellison*, 355 F.3d at 1275; (Tr. 39). While Plaintiff testified that she had financial difficulties, received government assistance for food, and her parents paid her medical bills until she obtained insurance again, the ALJ noted that the record is void of evidence that shows Plaintiff sought treatment at reduced or free clinics, was turned down for treatment due to financial reasons, or sought government-subsidized *health* care. (Tr. 39, 59). Based on these considerations, the ALJ determined the record was not consistent with an inability to afford treatment. (Tr. 39). Thus, substantial evidence supports the ALJ's decision because he evaluated the totality of the record and did not solely rely on Plaintiff's lack of treatment.

13

### 2. Substantial Evidence Supports the ALJ's Evaluation of Plaintiff's Subjective Pain Allegations.

Plaintiff asserts that the ALJ improperly dismissed her testimony and her allegations of pain based on the lack of objective medical evidence and contends that the ALJ should have accepted her testimony as true. (Pl. Mem. 15). She argues that the objective medical evidence indicating that she received injections for pain treatment "should boost her credibility." (*Id.*). If the ALJ determines a claimant's testimony is noncredible, he "must articulate explicit and adequate reasons for doing so." *Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995). If the ALJ does not articulate his reasoning "for discrediting subjective pain testimony[,] . . . as a matter of law, . . . the testimony [must] be accepted as true." *Foote*, 67 F.3d at 62. But once the ALJ considers a claimant's pain complaints, the ALJ may determine the claimant's complaints to be noncredible, and a court only reviews that determination based on the question of whether the finding is supported by substantial evidence. *See Marbury v. Sullivan*, 957 F.2d 837, 840 (11th Cir. 1992).

When a claimant seeks to establish debilitating pain based on subjective testimony and symptoms, the Eleventh Circuit's pain standard applies. *See Dryer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). This standard requires "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition" or (3) is it reasonable that the "objectively determined medical condition" is severe enough to cause the alleged pain. *Dryer*, 395 F.3d at 1210 (quotations omitted); *see Olabisi v. Comm'r of Soc. Sec.*, No. 22-10804, 2022 WL 17830251, at *8 (11th Cir. 2022) (unreported) (per curiam) (applying three-part test to plaintiff with alleged disability date in 2018); *see also* 20 C.F.R. § 404.1529(a)–(b). Thus, a claimant's statements alleging pain do not by themselves suffice to establish a disability. *See* 20 C.F.R. § 404.1529(a).

In appropriate cases, an ALJ must evaluate the "intensity and persistence" of the symptoms and determinate how such "symptoms limit [the claimant's] capacity for work." *Id.* § 404.1529(c)(1). In evaluating the intensity and persistence of the alleged pain, the ALJ will consider objective medical evidence but not discount the claimant's subjective statements. *See id.* § 404.1529(c)(2). The ALJ also considers nonmedical evidence presented in support of alleged pain symptoms because pain is "subjective and difficult to quantify." *Id.* § 404.1529(c)(3). But the ALJ evaluates the evidence, such as the claimant's statements about pain, "in relation to the objective medical evidence and other evidence" in its entirety and considers "whether there are any inconsistencies" or any "conflicts between [the claimant's] statements and the rest of the evidence." *Id.* § 404.1529(c)(4).

Here, contrary to Plaintiff's assertions otherwise, the ALJ did not dismiss Plaintiff's pain complaints. Instead, he found that Plaintiff had "medically determinable impairments [that] *could reasonably be expected* to cause the alleged symptoms." (Tr. 35) (emphasis added); *see Dryer*, 395 F.3d at 1210. Because Plaintiff satisfied that aspect of the pain standard, the ALJ proceeded to evaluate the "intensity and persistence" and determinate whether the "symptoms limit [Plaintiff's] capacity for work." 20 C.F.R. § 404.1529(c)(1). The ALJ correctly considered both objective medical evidence and nonmedical evidence and articulated his reasoning for why he found evidence unpersuasive, persuasive, or probative. (Tr. 35–42); *see* 20 C.F.R. § 404.1529(c)(2)–(3). Based on his findings and consideration of the evidence, the ALJ found "inconsistencies . . . between [Plaintiff's] statements and the rest of the evidence." 20 C.F.R. § 404.1529(c)(4); (Tr. 35, 39, 40). And the ALJ determined that that "overall evidence of record indicates a higher degree of functioning than . . . [Plaintiff] alleges." (Tr. 40). Because the ALJ fully considered the record in his evaluation of the "intensity and persistence" of Plaintiff's

15

symptoms in determining whether they "limit [Plaintiff's] capacity for work," substantial evidence supports the ALJ's determination that Plaintiff's pain complaints are not credible as to whether they are totally debilitating. 20 C.F.R. § 404.1529(c)(1); *see Marbury*, 957 F.2d at 840.

Substantial evidence supports the ALJ's evaluation of Plaintiff's testimony and lack of treatment. The ALJ's determination that Plaintiff is not disabled is due to be affirmed.

### VII. Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed. A separate order in accordance with this Memorandum of Decision will be entered.

**DONE** and **ORDERED** this April 4, 2023.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE